## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
In re:                                  :          Chapter 15
                                        :
Kraus Carpet Inc., et al.,1             :          Case No. 18-12057 (KG)
                                        :
       Debtors in a Foreign Proceeding. :          Joint Administration Pending
-------------------------------------------------------x
```

### MOTION OF FOREIGN REPRESENTATIVE PURSUANT TO SECTIONS 105(a), 363, 365, 1501, 1507, 1520, AND 1521 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002, 6004, 6006, AND 9014, FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING THE APPROVAL AND VESTING ORDER; (II) AUTHORIZING THE SALE OF THE DEBTORS' TPS BUSINESS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; AND (III) GRANTING RELATED RELIEF

Kraus Carpet Inc. (the "Foreign Representative"), in its capacity as the authorized foreign representative of the above captioned debtors (the "Debtors") in a Canadian proceeding (the "CCAA Proceeding") under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36  (as amended, the "CCAA") pending before the Ontario Superior Court of Justice (the "Canadian Court"), respectfully moves, pursuant to sections 105(a) 363, 365, 1501, 1507, 1520, and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "U.S. Order"): (a) recognizing the Sale Approval and Vesting Order to be entered by the Canadian Court (the "Canadian Sale

---

[1] The Debtors in these chapter 15 cases and the last four digits of each Debtor's U.S. tax identification number or Canadian Business Number, as applicable, are as follows:  Kraus USA Inc. (USA) (1024); Strudex Inc. (0906); Kraus Carpet Inc. (8687); Kraus Properties Inc. (1102); Kraus Canada Ltd. (1300); and Kraus Brands Inc. (8885).  The Debtors' mailing address for purposes of these chapter 15 cases is 65 Northfield Drive West, Waterloo, Ontario, Canada.

Order")[2] substantially in the form attached hereto as **Exhibit B**; (b) authorizing and approving the sale (the "Sale") of the Debtors' TPS Business (as defined herein) (the "Assets"), pursuant to the terms and conditions set forth in that certain Asset Purchase Agreement (the "Asset Purchase Agreement")[3] between Kraus Canada LP, Kraus Properties LP, and Kraus USA, Inc., and Q.E.P. Co., Inc. and Roberts Company Canada Ltd. (Q.E.P. Co., Inc. and Roberts Company Canada Ltd., collectively, the "Purchaser"), a redacted copy of which is attached hereto as **Exhibit C**,[4] and that certain Purchase and Sale Agreement for the premises located at 2216 Abutment Road in Dalton, Georgia between Kraus USA, Inc. and Q.E.P. Co., Inc., dated as of September 10, 2018 (the "Real Property Purchase Agreement," and collectively with the Asset Purchase Agreement, the "Purchase Agreement")[5] free and clear of liens, claims, encumbrances, and other interests; and (c) granting certain relief related thereto.  In support of this Motion, the Foreign Representative refers the Court to the statements contained in the *Declaration of Christopher Emmott in Support of (A) Motion of Foreign Representative for Entry of Provisional and Final Orders Granting Recognition of Foreign Main Proceeding, and (B) Other First Day Relief* (the "Emmott Declaration"), and the *Declaration of Susan Mingie in*

---

[2] The Foreign Representative expects that the Canadian Sale Order will be approved and entered by the Canadian Court before the hearing on this Motion. The Foreign Representative will file a notice of entry of the Canadian Sale Order as soon as practicable after its entry by the Canadian Court and, in any case, no later than two business days prior to the hearing on this Motion.

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Asset Purchase Agreement.

[4] The purchase price, deposit amounts, and certain commercially sensitive information in the Purchase Agreement are redacted pursuant to the Canadian Court's order sealing such terms.  Once the sale has closed in Canada, the Foreign Representative anticipates that it will be able to file an unredacted (or substantially unredacted) copy of the Purchase Agreement in advance of the hearing on this Motion.

[5] The Real Property Purchase Agreement has not yet been filed in the Canadian Proceeding.  The Foreign Representative will file the Real Property Purchase Agreement once it has been filed in the Canadian Proceeding, and in advance of the hearing on this Motion.  The Real Property Purchase Agreement is an exhibit to the Asset Purchase Agreement.

2

*Support of the Motion of Foreign Representative Pursuant to Sections 105(a), 353, 365, 1501, 1507, 1520, and 1521 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, and 9014, for Entry of an Order (I)  Recognizing and Enforcing the Approval and Vesting Order; (II) Authorizing the Sale of the Debtors' TPS Business Free and Clear of Any and All Liens, Claims, Encumbrances, and Other Interests; (III) Granting Related Relief* (the "Mingie Declaration"), both of which were filed substantially concurrently herewith and are incorporated herein by reference.  In further support of the relief requested herein, the Foreign Representative respectfully represents as follows:

### Jurisdiction and Venue

1.       This Court has jurisdiction over this matter pursuant to sections 157 and 1334 of title 28 of the United States Code and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012.  These cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a verified petition (collectively, the "Petitions") for recognition of the CCAA Proceeding for each Debtor pursuant to section 1515 of the Bankruptcy Code.  An order (the "CCAA Order") of the Canadian Court commencing the CCAA Proceeding and appointing the Foreign Representative is attached to each of the Petitions.

2.       This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code. Venue is proper before this Court pursuant to section 1410 of title 28 of the United States Code.

3. The statutory predicates for the relief requested herein are sections 105(a), 363, 365, 1501, 1507, 1520, and 1521 of the Bankruptcy Code. The relief is also appropriate under Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rule 6004-1.

<u>**Background**</u>

**A.      General Background**

4. The Debtors are part of a group of companies (collectively, the "<u>Kraus Group</u>") headquartered in Waterloo, Ontario, Canada. The Kraus Group was founded in 1959 in Kitchener, Ontario as a carpet manufacturer. Over the years it gradually expanded its operations and range of products. The Kraus Group is now an integrated carpet and flooring company. The Kraus Group was acquired by Hilco Capital in 2012.

5. The Kraus Group has two divisions: (i) the manufacturing of residential and commercial broadloom carpet (the "<u>Broadloom Business</u>"); and (ii) the distribution and sale of flooring products to commercial and residential customers, including carpet tiles, vinyl tiles, laminate, and hardwood (the "<u>TPS Business</u>").

6. On the date hereof (the "<u>Petition Date</u>"), the Foreign Representative commenced these chapter 15 cases by filing, among other things, verified chapter 15 petitions for each of the Debtors seeking recognition by the Court of the CCAA Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code

7. Detailed information about the Debtors' business and operations, the events leading to the Petition Date, and the facts and circumstances surrounding the CCAA Proceeding and these cases is set forth in the Emmott Declaration.

4

B.    **The Marketing Process**

8.    On March 20, 2018, Hilco Capital ("Hilco") engaged Deloitte Corporate Finance Inc. ("DCF") to manage the sale of the TPS Business as a standalone business that needed to be carved out of Kraus.[6]

9.    DCF, with the assistance of the Kraus Group's management, identified a comprehensive list of strategic buyers and financial buyers that might be interested in purchasing the TPS Business ("TPS Prospective Purchasers").  The list of TPS Prospective Purchasers was created from flooring industry associate membership listings, analyst reports and research reports on the flooring sectors, and DCF's own industry research.

10.    DCF developed a teaser that contained a summary of the opportunity to purchase the TPS Business (the "Teaser").  The Teaser was widely distributed effective March 23, 2018, including to the TPS Prospective Purchasers.

11.    DCF also assisted in the preparation of a Confidential Information Memorandum for the TPS Business (the "TPS CIM"), which described the TPS Business in significant detail, and included, among other things, the TPS Business sales and distribution structure, an overview of the industry, and a summary of relevant financial information.  DCF contacted by phone or email approximately 59 TPS Prospective Purchasers regarding the opportunity.

12.    Of the TPS Prospective Purchasers contacted, seven strategic purchasers and 14 financial purchasers executed non-disclosure agreements and were provided copies of the TPS CIM.

---

[6] DCF has marketed the Broadloom Business and is working with potential purchasers of the Broadloom Business, but this Motion is solely with respect to the sale of the TPS Business.

28642231.5

13.     On April 13, 2018, three TPS Potential Purchasers submitted expressions of interest ("EOIs").  The purchase prices listed in these EOIs were five to seven times the normalized TPS Business EBITDA disclosed in the TPS CIM.

14.     The three TPS Potential Purchasers who submitted EOIs ("TPS EOI Prospective Purchasers") were provided access to an electronic data room that had been populated by DCF. The data room contained financial, operational, human resources, legal, customer, and supplier information for the TPS Business.

15.     In late April and early May of 2018, the Kraus Group's management gave presentations to each of the three TPS EOI Potential Purchasers.  The purpose of these presentations was to provide the TPS EOI Potential Purchasers with an opportunity to meet management and better understand the TPS Business.

16.     In mid-May, 2018, two of the TPS EOI Prospective Purchasers withdrew from the sale process because the price they were willing to offer for the TPS Business after completing their due diligence was lower than the one stated in their respective EOIs.

17.     On May 24, 2018, the Purchaser signed a letter of intent ("May 24 LOI").  After signing the May 24 LOI, the Purchaser continued its due diligence and on July 10, 2018, advised DCF that it was no longer willing to offer the purchase price provided in the May 24 LOI but instead offered a lower purchase price.

18.     DCF advised the Purchaser that the lower price was unacceptable and the parties agreed that the May 24 LOI was no longer in effect.  Thereafter DCF attempted to find other purchasers, but was unable to do so.  Accordingly, DCF returned to the Purchaser to renegotiate a deal for the purchase of the TPS Business.  On August 9, 2018, the Purchaser signed the final LOI ("Final LOI").  The purchase price in the Final LOI is higher than the price proposed by the

28642231.5

Purchaser on July 10, 2018, but is lower than the original purchase price offered in the May 24 LOI.

### C.    Summary of Purchase Agreement and Local Rule 6004-1 Disclosures

19.    Pursuant to the Purchase Agreement, the Purchaser has agreed to purchase substantially all of the assets related to the TPS Business.  The Purchaser has also agreed to assume specified liabilities of the Kraus Group (including selected leases and trade accounts payable).

20.    The following is a summary of certain material provisions of the Purchase Agreement.[7]  The Foreign Representative believes that the Purchase Agreement is fair and reasonable under the circumstances, is the result of good-faith, arm's-length negotiations, and is in the best interests of the Debtors, their creditors, and other stakeholders.

21.    The purchased assets include all accounts receivable outstanding on the closing date that relate to the TPS Business, inventory, intellectual property owned by the Kraus Sellers used in connection with the TPS Business, the furniture, fixtures, equipment, supplies and other tangible personal property of the TPS Business, and customer lists and sales records.  The purchased assets also include the premises located at 2216 Abutment Road in Dalton, Georgia.

22.    The Purchase Agreement contemplates that the Purchasers will operate the TPS Business as a going concern, which will result in the preservation of at least 160 jobs.

23.    Among other things, the Purchase Agreement provides that the Debtors and Purchaser will use commercially reasonable efforts to achieve: (i) entry by the Canadian Court of

---

[7] Any summary of, or reference to, the terms and conditions of the Purchase Agreement and/or the Canadian Sale Order herein are qualified in their entirety by the actual terms and conditions of the Purchase Agreement and the Canadian Sale Order.  To the extent there is any inconsistency between any such summary or reference herein and the actual terms and conditions of the Purchase Agreement and the Canadian Sale Order, the actual terms and conditions of the Purchase Agreement and/or the Canadian Sale Order shall control.

the Canadian Sale Order by September 18, 2018; and (iii) entry by this Court of the U.S. Order

by no later than October 2, 2018.

24.     In accordance with Local Rule 6004-1, set forth below are certain provisions in

the Purchase Agreement and/or the Sale Order that such rule requires the Foreign Representative

to highlight in this Motion:[8]

| Provision | Description | Location in Sale Order or Purchase Agreement |
|---|---|---|
| Sale to Insider | The Purchaser is not an insider as defined by Bankruptcy Code section 101(31). | N/A |
| Management Agreements | The Purchaser will offer employment to certain employees on terms and conditions that are substantially the same as terms and conditions on which the such employees are employed immediately prior to the Closing Date (except, with respect to Employees located in the U.S., with respect to Benefit Plans). | Purchase Agreement §8.01. |
| Releases | The Sale will be free and clear of all liens, claims, encumbrances and other interests. | U.S. Order ¶¶ N, 8, 9, 12. |

---

[8] Pursuant to Local Rule 6004-1(b)(iv), a Sale Motion (as defined in the Local Rules) must highlight certain provisions contained in the proposed form of sale order and/or the underlying purchase agreement. The Foreign Representative has highlighted below the relevant provisions of the Purchase Agreement that implicate Local Rule 6004-1(b)(iv) by providing a citation to the relevant sections of the Purchase Agreement and/or the U.S. Order.  In addition, the Foreign Representative highlights that, pursuant to the proposed U.S. Order, it is requesting (i) the Sale to be approved under section 363(f) of the Bankruptcy Code, free and clear of any Interest (as defined in the U.S. Order) and (ii) a waiver of Bankruptcy Rule 6004(h).

| Provision | Description | Location in Sale Order or Purchase Agreement |
|---|---|---|
| Private Sale / No Competitive Bidding | The Sale is a private sale. The Purchase Agreement will not be subject to higher and better offers at a public auction subject to procedures established by this Court.[9] As described above, however, the TPS Business was subjected to a lengthy and robust marketing process. Through the Motion, the Foreign Representative seeks the approval by this Court of the Sale set to be approved by the Canadian Court on September 18, 2018. | U.S. Order ¶¶ G, H, I. |
| Closing and Other Deadlines | Purchaser may immediately terminate the Purchase Agreement if both the Canadian Sale Order and the U.S. Order have not been entered by October 11, 2018. | Purchase Agreement §11.01(d). |
| Good Faith Deposit | [Redacted]. | Purchase Agreement §2.06(a). |
| Interim Agreements with Purchaser | The Debtors and the Purchaser shall enter into an agreement for the provision of certain transition services. | U.S. Order ¶ 6. |
| Use of Proceeds | Pursuant to section 1521(b) of the Bankruptcy Code and the Canadian Sale Order, the distribution of the proceeds of the Sale is entrusted to the Foreign Representative. | U.S. Order ¶ 4. |
| Tax Exemption | N/A | N/A |
| Record Retention | The Debtors will retain their books and records for a period of two years after the Closing Date. | Purchase Agreement §8.03. |
| Sale of Avoidance Actions | N/A | N/A |
| Requested Findings as to Successor Liability | N/A | N/A |
| Sale Free and Clear of Unexpired Leases | N/A | N/A |
| Credit Bid | N/A | N/A |
| Relief from Bankruptcy Rule 6004(h) | Yes | U.S. Order ¶ 7. |

---

[9] As set forth in the Motion, the Sale is the result of an appropriate solicitation and sale process conducted by the Debtors. As set forth herein, the Foreign Representative believes that this process, resulting in the Purchase Agreement with the Purchaser, has produced the highest and best offer for the Purchased Assets.

28642231.5

25.    The Purchase Agreement contemplates that certain leases and contracts held in certain of the Debtors' names will be assigned to and assumed by the Purchaser at closing. The Purchase Agreement requires the Debtors to use all reasonable commercial efforts to obtain the landlords' and contractual counterparties' consent to assignment where required under the leases or contracts to be assigned for the 90 days following closing of the TPS Transaction.

26.    If any of the contracts that are contemplated to be assigned under the Purchase Agreement cannot be assigned, the Debtors and the Purchaser shall use commercially reasonable efforts to enter into such arrangements to provide the parties the economic and, to the extent permitted under applicable law, operational equivalent of the transfer of such contract.

27.    To facilitate an effective and efficient transition of the TPS Business to the Purchaser, the Debtors and the Purchaser expect to enter into an agreement for the provision of certain transition services (the "<u>Transition Services Agreement</u>"). The transition services contemplated under the Transition Services Agreement include the transition of warehousing functions, information technology services, and employment of certain of the employees of the TPS Business, and collection of accounts receivable outstanding on closing.[10]

<u>**Relief Requested**</u>

28.    By this Motion, the Foreign Representative respectfully requests the entry an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, pursuant to sections 363, 365, 1501, 1507, 1520, 1521, 1525, 1527, and 105(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1(b): (a) recognizing the Canadian Sale Order entered by the Canadian Court, which will (i) approve the Purchase Agreement and certain ancillary agreements thereto, (ii)

---

[10] The Transition Services Agreement has not yet been filed in the Canadian Proceeding. The Foreign Representative will file the Transition Services Agreement once it has been filed in the Canadian Proceeding, and in advance of the hearing on this Motion.

authorize and direct the Debtors and their Canadian affiliates to take all steps necessary to consummate the transactions contemplated by the Purchase Agreement, (iii) vest in the Purchaser absolute, clear, and unencumbered title in and to the Assets free and clear of all liens and encumbrances relating to, accruing or arising any time prior to the Closing Date (collectively, the "Liens"), with such Liens attaching to the proceeds generated from the sale of the Assets, and (iv) find that the Purchase Agreement is commercially reasonable and is in the best interest of the Debtors, their Canadian affiliates, and all of their stakeholders; (b) authorizing and approving the Sale free and clear of any Liens; (c) entrusting the distribution of the proceeds generated from the sale of the Assets to the Foreign Representative pursuant to section 1521(b) of the Bankruptcy Code; and (d) granting certain related relief.

29.     The Foreign Representative believes that the Sale of the Assets in accordance with the terms and conditions of the Purchase Agreement, the Canadian Sale Order, and the U.S. Order represents the best realization of value for the Debtors' creditors and other stakeholders under the circumstances, and this Court's recognition of the Canadian Sale Order and approval of the Sale free and clear of Liens is a critical step in achieving that result.

## Basis for Relief

**I.      The Court Should Recognize and Enforce the Canadian Sale Order and Authorize the Sale Pursuant to Section 363 of the Bankruptcy Code.**

30.     Section 363 of the Bankruptcy Code applies to the sale of any of the Assets located within the territorial jurisdiction of the United States. *See 11 U .S.C. § 1520(a)(2); see also In re Fairfield Sentry Limited,* 768 F.3d 239 (2d Cir. 2014).   Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1).   Section 363 of the Bankruptcy Code does not set forth a standard for

11

determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts in this Circuit, and in other districts, have required that the decision to sell assets outside the ordinary course of business be based upon the sale proponent's sound business judgment.  *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.),* 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D.D.C. 1991); *see also In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *Myers v. Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996).

31.    The "sound business judgment" test requires a proponent of a sale to establish four elements in order to justify the sale of property outside the ordinary course of business. These factors are: (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business; (b) that adequate and reasonable notice has been provided to interested persons; (c) that the trustee or debtor in possession has obtained a fair and reasonable price; and (d) that the purchaser has acted in good faith. *See In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *In re Exaeris Inc.,* 380 B.R. 741, 744 (Bankr. D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club),* 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.,* 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).

32.    In this case, ample business justification exists to sell the Assets to the Purchaser, as the Sale satisfies all four conditions set forth in *Abbotts Dairies.* First, sound business purposes justify the Sale.  The Sale presents the best opportunity for the Debtors to maximize the value of the TPS Business and the Debtors' assets as a whole.  The consideration to be received through the Sale as set forth in the Purchase Agreement represents fair value for the TPS

Business, and a sale of the TPS Business separate from the Broadloom Business will enable the Debtors to receive a higher aggregate price for the Debtors' assets.

33.     Second, in light of the sale process that the Debtors and DCF have undertaken, adequate and reasonable notice of the Sale has been provided to interested persons.  Specifically, creditors of the Debtors in the United States are being served with notice of this Motion. Additionally, similar notice was provided of the Canadian Sale Order to affected creditors known in Canada.

34.     Third, the price being paid by the Purchaser represents a fair and reasonable price for the TPS Business.  Indeed, the purchase price for the Assets is the highest offer received by the Debtors and DCF during the marketing process.

35.     Fourth, as discussed more fully in the Emmott Declaration and the Mingie Declaration, the negotiation process undertaken with respect to the Purchase Agreement satisfies the good faith requirement.  Indeed, the Purchase Agreement is the product of good faith and arm's-length negotiations among the parties.

36.     In addition, granting the requested relief is in the public interest. Indeed, the purpose of chapter 15 of the Bankruptcy Code is:

> [T]o incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of
>
> (1) cooperation between—
>
> > (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
> >
> > (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2) greater legal certainty for trade and investment;

28642231.5

(3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4) protection and maximization of the value of the debtor's assets; and

(5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

37.     Courts in this District have granted relief similar to the relief requested in this Motion.  *See, e.g., In re Thane International, Inc.,* Case No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015) (recognizing and enforcing sale order entered by Canadian court and separately authorizing and approving sale free and clear of any and all liens, claims, encumbrances and other interests under section 363 of the Bankruptcy Code and approving the assignment of assumed contracts); *Xchange Technology Group LLC,* Case No. 13-12809 (KG) (Bankr. D. Del. Nov. 25, 2013) (same); *Arctic Glacier International Inc.,* Case No. 12-10605 (KG) (Bankr. D. Del. July 17, 2012) (same); *In re EarthRenew IP Holdings LLC,* Case No. 10-13363 (CS S) (Bankr. D. Del. Feb. 18, 2011) (recognizing and enforcing sale order entered by Canadian court and separately authorizing and approving the sale free and clear of any and all liens, claims, encumbrances and other interests under section 363 of the Bankruptcy Code); *In re Grant Forest Products,* Case No. 10-11132 (PJW) (Bankr. D. Del. April 26, 2010) (same); *In re Destinator Technologies Inc.,* Case No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008) (same).

38.     For all of the foregoing reasons, the Foreign Representative respectfully submits that there is more than ample justification for this Court to enter the U.S. Order, thereby recognizing and enforcing the Canadian Sale Order and authorizing the Sale pursuant to section 363 of the Bankruptcy Code.

**II.**     **The Court Should Authorize and Approve the Sale Free and Clear of Interests and Successor Liability Pursuant to Section 363(f) of the Bankruptcy Code.**

39.     The Foreign Representative also respectfully requests that this Court authorize the Sale free and clear of Interests (as defined in the U.S. Order).  Under section 363(f) of the Bankruptcy Code, a trustee or a debtor in possession may sell all or any part of a debtor's property free and clear of any and all liens, claims, encumbrances, and other interests in such property if: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  *See* 11 U.S.C. § 363(f); *In re P.K.R. Convalescent Ctrs., Inc.,* 189 B.R. 90, 93-94 (Bankr. E.D. Va. 1995) ("[Section] 363 covers more situations than just sales involving liens . . . Section 363(f) addresses sales free and clear of any interest . . . ."); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).  In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims or encumbrances under section 105 of the Bankruptcy Code.  *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.),* 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

28642231.5

40.     A sale of the Assets other than one free and clear of all Interests, except as otherwise provided in the Purchase Agreement and the Canadian Sale Order, would yield substantially less value for the Debtors and their creditors than the Sale.  Therefore, a sale free and clear of all Interests is in the best interests of the Debtors, their creditors, and other parties in interest.

41.     With respect to any creditors that may assert an Interest in the Assets, the Foreign Representative submits that at least one of the subsections of 363(f) of the Bankruptcy Code applies to such creditors and, in most cases, more than one of such subsections is satisfied.   Notably, the Debtors' senior secured lender, Wells Fargo Capital Finance Corporation Canada, and junior secured lender, Red Ash Capital Partners II Limited Partnership, have consented to the Sale.  Accordingly, the Foreign Representative submits that the sale of the Assets free and clear of all Interests, other than as provided in the Canadian Sale Order, satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

42.     Finally, it is well established that a bankruptcy court has the power under section 363(f) of the Bankruptcy Code to approve the sale of a debtor's assets free and clear of successor liability claims against the debtor.   *In re TWA Airlines, Inc.,* 322 F.3d 283, 288-90 (3d Cir. 2003) (holding that successor liability claims are "interests in property" within the meaning of section 363(f) of the Bankruptcy Code); *United Mine Workers of Am. Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.),* 99 F.3d 573 (4th Cir. 1996) (same).  The Foreign Representative respectfully requests that this Court authorize the Sale of the Assets to the Purchaser free and clear of claims based upon successor liability.  In this way, the Purchaser will obtain increased certainty concerning any claims associated with the Purchase Agreement in the United States as it will be assured that

16

it will not be considered a successor. The Foreign Representative submits that the relief requested herein is an appropriate exercise of this Court's authority under chapter 15 of the Bankruptcy Code and does not conflict with the Canadian Sale Order.

### III.    The Court Should Afford the Purchaser All Protections under Sections 363(m) and (n) of the Bankruptcy Code as a Good Faith Purchaser.

43.    In addition to the relief requested above, the Foreign Representative requests that the Purchaser receive the protections set forth in sections 363(m) and (n) of the Bankruptcy Code.  Specifically, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," courts have stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbots Dairies of Pa.,* 788 F.2d at 147.  Courts have held that in order to demonstrate a lack of good faith, a party would have to show "fraud or collusion between the purchaser and [seller] or an attempt to take grossly unfair advantage [of other potential purchasers.]" *Id.*

44.    As described in the Emmott Declaration, the Purchase Agreement was negotiated without fraud or collusion, in good faith, and from an arm's-length bargaining position. Nor did the Debtors enter into the Purchase Agreement for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.  To the Foreign Representative's knowledge, no party has engaged in any conduct that would cause or permit the Purchase Agreement to be set

aside under section 363(n) of the Bankruptcy Code. Accordingly, the Foreign Representative seeks a finding that the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and has not violated section 363(n) of the Bankruptcy Code.

## IV.    The Court Should Entrust Distribution of the Sale Proceeds to the Foreign Representative.

45.    Distribution of funds to a debtor's creditors is governed by section 1521(b) of the Bankruptcy Code. *See* 11 U.S.C. § 1521(b). That section provides that a court may "entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b).

46.    Although relief under section 1521(b) is discretionary, "[o]nce a case is recognized as a foreign main proceeding, chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity." *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009); *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (same). A foreign representative bears the initial burden of establishing that he or she is entitled to relief under section 1521(b) of the Bankruptcy Code, including that creditors are sufficiently protected. *In re Lee*, 472 B.R. 156, 182 (Bankr. D. Mass. 2012). However, "the ultimate burden of establishing the absence of sufficient protection rests on the objecting parties." *Id.*

47.    The Foreign Representative respectfully submits that U.S. creditors' ability to pursue in the CCAA Proceeding any right to payment provides those creditors with sufficient protection. *See In re Atlas Shipping*, 404 B.R. at 742 (noting that 1521(b) relief was appropriate because the foreign representative had acknowledged on the record that such relief was "without

prejudice to creditors' rights, if any, to assert in the Danish bankruptcy court their rights to the [assets]" and noting that the "funds [were] subject to administration by the bankruptcy court in Denmark"); *In re Milovanovic*, 357 B.R. 250, 257 (Bankr. S.D.N.Y. 2006) (ordering funds transmitted abroad over objection of an attaching creditor where creditor was "free to pursue all of its rights and claims in the Serbian court").

48.     The Foreign Representative therefore submits that entrusting it with the distribution of the Sale proceeds is appropriate and that the CCAA Proceeding is an appropriate forum for such distribution, as U.S. creditors will have a full and fair opportunity to assert any interest they think they might have in the Sale proceeds before the Canadian Court.

## **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**

49.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Foreign Representative requests that the Proposed Order, once entered, be effective immediately by providing that, to the extent applicable, the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived.

50.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen (14) day stay period, commentators have suggested that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately

"where there has been no objection to the procedure." 10 Collier on Bankruptcy, ¶6004.11 (L. King, 16th rev. ed. 2011). Moreover, it has been suggested that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

51.     Time is of the essence with respect to the U.S. Order.  Accordingly, the Foreign Representative hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## Notice

52.     Notice of this Motion has been provided to: (i) counsel to Wells Fargo Capital Finance Corporation Canada (the Debtors' prepetition senior secured lender);  (ii) Red Ash Capital Partners II Limited Partnership (the Debtors' prepetition junior secured lender; (iii) any party known to hold or assert a lien on the Assets; (iv) counsel to the Debtors in the Canadian Proceeding on behalf of the Debtors; (v) the Office of the United States Trustee for the District of Delaware; and (vi) any party that files a notice of appearance in the Chapter 15 Cases.  In light of the nature of the relief requested herein, the Foreign Representatives submits that no other or further notice of the Motion is necessary or required.

## Conclusion

53.     For the foregoing reasons, the Foreign Representative respectfully requests that the Court enter the U.S. Order, substantially in the form annexed hereto as **Exhibit A**, granting (i) the relief requested herein, and (ii) such other and further relief as the Court may deem proper.

28642231.5

Dated: September 11, 2018
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Matthew B. Harvey*
Derek C. Abbott (No. 3367)
Matthew B. Harvey (No. 5186)
1201 N. Market St., 16th Floor
Wilmington, DE  19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989
dabbott@mnat.com
mharvey@mnat.com

-and-

HONIGMAN MILLER SCHWARTZ AND COHN
LLP
Joseph R. Sgroi
Scott B. Kitei
Glenn S. Walter
2290 First National Building
660 Woodward Avenue
Detroit, Michigan  48226-3506
Telephone:  (313) 465-7000
Facsimile:  (313) 465-7713
jsgroi@honigman.com
skitei@honigman.com
gwalter@honigman.com

28642231.5