IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x
In re:                                              :     Chapter 15
                                                    :
Kraus Carpet Inc., et al.,[1]                       :     Case No. 18-12057(KG)
                                                    :
    Debtors in a Foreign Proceeding.                :     Jointly Administered
                                                    :
                                                    :     Re: D.I. 2, 9, 10, 21, 38 & 42
---------------------------------------------------x

**ORDER GRANTING MOTION OF FOREIGN REPRESENTATIVE PURSUANT TO SECTIONS 105(a), 363, 365, 1501, 1507, 1520, AND 1521 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002, 6004, 6006, AND 9014, FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING THE APPROVAL AND VESTING ORDER; (II) AUTHORIZING THE SALE OF THE DEBTORS' TPS BUSINESS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Kraus Carpet Inc. (the "Foreign Representative"), in its capacity as the authorized foreign representative of the above captioned debtors (the "Debtors") in a Canadian proceeding (the "CCAA Proceeding") under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "CCAA") pending before the Ontario Superior Court of Justice (the "Canadian Court"), for entry of an order pursuant to sections 105(a) 363, 365, 1501, 1507, 1520, and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

---

[1]   The Debtors in these chapter 15 cases and the last four digits of each Debtor's U.S. tax identification number or Canadian Business Number, as applicable, are as follows: Kraus USA Inc. (USA) (1024); Strudex Inc. (0906); Kraus Carpet Inc. (8687); Kraus Properties Inc. (1102); Kraus Canada Ltd. (1300); and Kraus Brands Inc. (8885). The Debtors' mailing address for purposes of these chapter 15 cases is 65 Northfield Drive West, Waterloo, Ontario, Canada.

[2]   Capitalized terms used herein but not otherwise defined have the meanings given to them in the applicable Acquisition Agreement (as defined below) or, if not defined in the Acquisition Agreement, the meanings given to them in the Motion.

28862178.2

Rules"): (a) recognizing the Sale Approval and Vesting Order entered by the Canadian Court (the "Canadian Sale Order"); (b) authorizing and approving the sale (the "Sale") of the Debtors' TPS Business (the "Assets"), pursuant to the terms and conditions set forth in (i) that certain Asset Purchase Agreement (the "Asset Purchase Agreement") between Kraus Canada LP, Kraus Properties LP, Kraus USA, Inc., and Kraus Carpet LP on the one hand and Q.E.P. Co., Inc. and Roberts Company Canada Ltd. (Q.E.P. Co., Inc. and Roberts Company Canada Ltd., individually and collectively, the "Purchaser") on the other hand; and (ii) that certain Purchase and Sale Agreement (the "Real Estate Purchase Agreement", together with the Asset Purchase Agreement, individually and collectively, the "Acquisition Agreement") between Kraus USA, Inc., and Purchaser, in each case free and clear of liens, claims, encumbrances, and other interests, in each case free and clear of liens, claims, encumbrances, and other interests other than Permitted Encumbrances; and (c) granting certain relief related thereto; and upon the *Declaration of Christopher Emmott in Support of (A) Motion of Foreign Representative for Entry of Provisional and Final Orders Granting Recognition of Foreign Main Proceeding, and (B) Other First Day Relief* (the "Emmott Declaration"), and the *Declaration of Susan Mingie in Support of the Motion of Foreign Representative Pursuant to Sections 105(a), 353, 365, 1501, 1507, 1520, and 1521 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, and 9014, for Entry of an Order (I) Recognizing and Enforcing the Approval and Vesting Order; (II) Authorizing the Sale of the Debtors' TPS Business Free and Clear of Any and All Liens, Claims, Encumbrances, and Other Interests; and (III) Granting Related Relief* (the "Mingie Declaration"); and the arguments of counsel made, and the evidenced adduced, at a hearing before this Court (the "Sale Hearing"); and upon the record of the Sale Hearing and the above-

captioned chapter 15 cases, and after due deliberation thereon, and good cause appearing therefor, and in accordance with Bankruptcy Rule 7052, it is hereby

**FOUND AND DETERMINED THAT[3]:**

A. The Canadian Court has duly entered the Canadian Sale Order approving and authorizing the Debtors' execution of the Acquisition Agreement and consummation of the Sale of the Assets.

B. This Court has jurisdiction and authority to hear and determine the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue of these chapter 15 cases and the Motion in this Court and this District is proper under 28 U.S.C. § 1410.

C. Based on the affidavits of service filed with, and representations made to, this Court: (i) notice of the Motion, the Sale Hearing, and the Sale was proper, timely, adequate, and sufficient under the circumstances of these chapter 15 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules; and (ii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the entry of this Order is necessary or shall be required.

D. The Foreign Representative provided notice and a reasonable opportunity to object and be heard with respect to the Sale, the Motion, and the relief requested therein to the necessary parties in interest, including the following: (i) counsel to Wells Fargo Capital Finance Corporation Canada (the Debtors' prepetition senior secured lender); (ii) Red Ash Capital Partners II Limited Partnership (the Debtors' prepetition junior secured lender; (iii) any party

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

28862178.2

known to hold or assert a lien on any of the Assets; (iv) counsel to the Debtors in the Canadian Proceeding on behalf of the Debtors; (v) the Office of the United States Trustee for the District of Delaware; and (vi) all parties who have requested notice in these chapter 15 cases pursuant to Bankruptcy Rule 2002.

E. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

F. The relief granted herein is necessary and appropriate, is in the interest of the public, promotes international comity, is consistent with the public policy of the United States, is warranted pursuant to sections 105(a), 363(b), (f), (m) and (n), 365, 1501, 1514, 1520, and 1521 of the Bankruptcy Code, and will not cause any hardship to any parties in interest that is not outweighed by the benefits of the relief granted.

G. Based on information contained in the Motion, the Emmott Declaration, the Mingie Declaration, and the record made at the Sale Hearing, Deloitte Corporate Finance conducted a marketing process to solicit interest in the Assets and the sale process was non-collusive, duly noticed and provided a reasonable opportunity for other entities to make an offer to purchase the Assets. The Canadian Court authorized the Sale pursuant to the terms of the Acquisition Agreement and entered the Canadian Sale Order. The Foreign Representative has recommended the Sale in accordance with the Acquisition Agreement, and it is appropriate that the Assets be sold, transferred, assigned, and vested in the Purchaser on the terms set forth in the Acquisition Agreement.

H. The Debtors entry into and performance under the Acquisition Agreement and related agreements (i) constitute a sound and reasonable exercise of the Debtors' business judgment, (ii) provide value to and are beneficial to the Debtors, and are in the best interests of

28862178.2

the Debtors and their stakeholders, and (iii) are reasonable and appropriate under the circumstances. Business justifications for the Sale include, but are not limited to, the following: (I) the Acquisition Agreement constitutes the highest and best offer received for the Assets; (II) the Acquisition Agreement presents the best opportunity to maximize the value of the Assets on a going concern basis and avoid decline and devaluation of the Assets; (III) unless the Sale and all of the other transactions contemplated by the Acquisition Agreement and related agreements are concluded expeditiously, as provided for pursuant to the Acquisition Agreement, recoveries to creditors may be diminished; and (IV) the value received for the Assets will be maximized through the sale pursuant to the Acquisition Agreement and related agreements.

I.  The consideration provided by the Purchaser for the Assets under the Acquisition Agreement constitutes fair consideration and reasonably equivalent value for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and the laws of the United States, any state, territory, possession thereof, or the District of Columbia.

J.  No bulk sales law or any similar law of any state or other U.S. jurisdiction shall apply in any way to the Sale.

K.  Purchaser is not, and will not be, a mere continuation, and is not holding itself out as a mere continuation, of any of the Debtors and there is no continuity between Purchaser and the Debtors. The Sale does not amount to a consolidation, merger or *de facto* merger of Purchaser and any of the Debtors.

L.  Time is of the essence in consummating the Sale. To maximize the value of the Assets, it is essential that the Sale occur and be recognized and enforced in the United States promptly. The Foreign Representative on behalf of the Debtors has demonstrated compelling

5

28862178.2

circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the Acquisition Agreement. Accordingly, there is cause to waive the stay that would otherwise be applicable under Bankruptcy Rules 6004(h) and 6006(d), and accordingly the transaction contemplated by the Acquisition Agreement can be closed immediately upon entry of this Order.

M. Based upon information contained in the Motion, the Emmott Declaration, the Mingie Declaration, the other pleadings filed in the above-captioned cases, and the record made at the Sale Hearing, the Acquisition Agreement and each of the transactions contemplated therein were negotiated, proposed and entered into by the Debtors and Purchaser in good faith, without collusion and from arms'-length bargaining positions. Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Neither the Debtors, the Foreign Representative, nor Purchaser has engaged in any conduct that would cause or permit the Acquisition Agreement or the consummation of the Sale to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between Purchaser and the Debtors.

N. The Acquisition Agreement was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.

O. The Foreign Representative, on behalf of itself and the Debtors, may sell the Assets free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, encumbrances and other interests of any kind or nature whatsoever against the Debtors or the Assets, other than Permitted Encumbrances, because with respect to each creditor

asserting any such interest, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

P. The total consideration to be provided under the Acquisition Agreement reflects Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Assets free and clear of all Claims (including, without limitation, any potential derivative, vicarious, transferee or successor liability Claims), other than Permitted Encumbrances.

Q. The transfer of the Debtors' rights under the Transferred Contracts as and to the extent provided in the Canadian Sale Order is integral to the Acquisition Agreement, is in the best interests of the Debtors and represents the reasonable exercise of the Debtors' business judgment.

R. As of the filing of the Monitor's Certificate in the CCAA Proceeding and the delivery thereof to the Purchaser, the transfer of the Assets to Purchaser will be a legal, valid and effective transfer of the Assets, and will vest Purchaser with all right, title and interest of the Debtors in and to the Assets, free and clear of all Claims, other than the Permitted Encumbrances..

S. The Foreign Representative and Debtors (i) have full power and authority to execute the Acquisition Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate action of the Debtors, (ii) have all of power and authority necessary to consummate the transactions contemplated by the Acquisition Agreement, and (iii) upon entry of this Order, other than any consents identified in the Acquisition Agreement (including with respect to antitrust matters), need no consent or approval from any other Person to consummate the Sale.

28862178.2

T.     The Debtors are the sole and rightful owners of the Assets, and no other Person has any ownership right, title, or interest therein.

U.     The Acquisition Agreement is a valid and binding contract between the Debtors and Purchaser and shall be enforceable pursuant to its terms. The Acquisition Agreement and the Sale itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, the Foreign Representative in this Chapter 15 case, any chapter 7 or chapter 11 trustee appointed in any successor cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

V.     The Purchaser would not have entered into the Acquisition Agreement and would not consummate the Sale and related transactions contemplated thereby, thus adversely affecting the Debtors, their creditors, and other parties in interest, if the Sale of the Assets to the Purchaser was not free and clear of all liens, claims, encumbrances and other interests (other than Permitted Encumbrances), or if Purchaser would, or in the future could, be liable for any such claims, including, as applicable, certain liabilities related to the Business and Assets that will not be assumed by Purchaser, as described in the Acquisition Agreement.

W.    A sale of the Assets other than one free and clear of all liens, claims encumbrances and other interests would yield substantially less value than the Sale; thus, the Sale free and clear of all liens, claims, encumbrances and other interests, in addition to all of the relief provided herein, is in the best interests of the Debtors, their creditors, and other parties in interest.

X.     The interests of the Debtors' creditors in the United States are sufficiently protected.

28862178.2

Y. The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to section 1521(b) of the Bankruptcy Code.

Z. The CCAA Proceeding is a "foreign main proceeding" as that term is defined in section 1502(4) of the Bankruptcy Code, and the Foreign Representative is a "foreign representative" as that term is defined in section 101(24) of the Bankruptcy Code.

AA. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

BB. Any and all findings of fact and conclusions of law announced by this Court at the Sale Hearing are incorporated herein.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED.

2. Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

3. The Canadian Sale Order is recognized in full and given full force and effect in the United States.

4. The Acquisition Agreement, the Sale pursuant to the terms of the Acquisition Agreement, the transfers and assignments of the Assets located within the United States on the terms set forth in the Acquisition Agreement, the Canadian Sale Order, this Order, all other transactions contemplated therein, the consummation of all transactions contemplated therein and all of the terms and conditions thereof are hereby approved and authorized pursuant to sections 105, 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code and applicable law. The

failure specifically to include any particular provision of the Acquisition Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Acquisition Agreement be authorized and approved in its entirety. The consideration provided by Purchaser under the Acquisition Agreement is fair and reasonable.

5. Pursuant to section 1521(b) of the Bankruptcy Code and the Canadian Sale Order, the distribution of the proceeds of the Sale is entrusted to the Monitor in the CCAA Proceeding.

6. All objections to the entry of this Order that have not been withdrawn, waived, or settled, or otherwise resolved pursuant to the terms hereof, are denied and overruled on the merits, with prejudice.

7. Pursuant to sections 105, 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, the Canadian Sale Order, and this Order, the Debtors, the Purchaser and the Foreign Representative (as well as their officers, employees and agents) are authorized to take any and all actions necessary or appropriate to: (a) consummate the Sale of the Assets to the Purchaser in accordance with the Acquisition Agreement, the Canadian Sale Order and this Order; (b) provide services in accordance with the Transition Services Agreement; (c) execute and perform in accordance with the Escrow Agreement; and (d) perform, consummate, implement and close fully the Acquisition Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Acquisition Agreement and the Sale and to take such additional steps and all further actions as may be (i) reasonably requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to Purchaser, or reducing to possession, the Assets, or (ii) necessary or appropriate to the performance of the obligations contemplated by the Acquisition Agreement, all without further order of the Court.

8.  All Persons that are currently in possession of some or all of the Assets located in the United States or are otherwise subject to the jurisdiction of this Court are hereby directed to surrender possession of such Assets to Purchaser on the Closing Date.

9.  The fourteen-day stay provided for in Bankruptcy Rules 6004(h) and 6006(d) shall be, and hereby is, waived in connection with this Order.

### Transfer of the Assets Free and Clear

10. Pursuant to sections 105(a), 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, on the date of closing pursuant to the terms of the Acquisition Agreement, the Assets shall be transferred and absolutely vest in the Purchaser, without further instrument of transfer or assignment, all rights, title, and interest of the Debtors to the Assets, and such transfer shall: (a) be a legal, valid, binding and effective transfer of the Assets to the Purchaser; (b) vest Purchaser with all right, title and interest of the Debtors in the Assets, and (c) be free and clear, other than Permitted Encumbrances, of any and all Claims, security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, pledges, options, warrants, trusts or deemed trusts (whether contractual, statutory, or otherwise), encumbrances, obligations, interests, liabilities, demands, guarantees, restrictions, contractual commitments, rights, including without limitation, rights of first refusal and rights of set-off, liens, executions, levies, penalties, charges, financial or monetary claims, adverse claims, or rights of use, puts or forced sale provisions exercisable as a consequence of or arising from the closing of the Sale, whether arising prior to or subsequent to the commencement of the Canadian Proceeding and these chapter 15 cases, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured, legal, equitable, possessory or otherwise, actual or threatened civil, criminal, administrative, regulatory, arbitral or investigative inquiry, action, complaint, suit, investigation, dispute, petition or proceeding by or

28862178.2

before any governmental authority or person at law or in equity whether imposed by agreement, understanding, law, equity or otherwise, and any claim or demand resulting therefrom.

11.     Pursuant to sections 105(a), 363(f), 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, upon the closing of the Sale: (a) the Assets shall be sold, transferred, or otherwise conveyed to the respective Purchaser free and clear of all liens, claims, encumbrances and other interests, other than Permitted Encumbrances (as defined in the Acquisition Agreement); (b) no holder of a lien, claim, encumbrance or other interest against the Debtors shall interfere, and each and every holder of a lien, claim, encumbrance or other interest against the Debtors is enjoined from interfering, with the Purchaser's rights and title to or use and enjoyment of the Assets; and (c) the Acquisition Agreement, the Sale, and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor thereof. All persons or entities holding liens, claims, encumbrances or other interests in, to or against the Assets are forever barred and enjoined from asserting such liens, claims, encumbrances or other interests against the Purchaser or its affiliates and their respective officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives and their respective affiliates, successors and assigns or such Assets from and after closing of the Sale. All liens and encumbrances relating to, accruing, or arising any time prior to the closing date of the sale shall attach to the proceeds generated from the sale of the Assets.

12.     Each and every federal, state, and local governmental agency or department is authorized and directed to accept (and not impose any fee, charge, or tax in connection therewith for) any and all documents and instruments necessary or appropriate to consummate the Sale and other transactions contemplated by the Acquisition Agreement.

28862178.2

13. Effective as of Closing under the Acquisition Agreement, the Canadian Sale Order and this Order shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Assets to the Purchaser free and clear of all liens, claims, encumbrances and other interests.

14. Except as otherwise provided in the Acquisition Agreement, Purchaser and its successors and assigns shall have no liability for, and all Persons (and their respective successors and assigns) including, without limitation, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, employees, former employees, pension plans, multiemployer pension plans, labor unions, trade creditors and any other creditors holding Claims against the Debtors or the Assets, are hereby forever barred, estopped and permanently enjoined from asserting or pursuing any Claims, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee or successor or otherwise, of any kind, nature or character whatsoever, against Purchaser, its Affiliates, successors or assigns, its property or the Assets, including, without limitation, taking any of the following actions with respect to a Claim (other than an Assumed Liability): (a) commencing or continuing in any manner any action or other proceeding against Purchaser, its Affiliates, successors or assigns, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against Purchaser, its Affiliates, successors or assigns, assets, or properties; (c) creating, perfecting, or enforcing any Claims against Purchaser, its successors or assigns, assets or properties; (d) asserting a Claim as a setoff, right of subrogation or recoupment of any kind against any obligation due Purchaser or its successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the

28862178.2

provisions of this Order or the agreements or actions contemplated or taken in respect thereof. No such Persons shall assert or pursue against Purchaser or its Affiliates, successors or assigns any such Claim.

15. This Order (a) shall be effective as a determination that, as of the Closing Date, all Claims, other than Permitted Encumbrances, have been unconditionally released, discharged and terminated as to Purchaser and the Assets, and that the conveyances and transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Acquisition Agreement.[4]

16. If any Person that has filed in any federal, state or local filing, recording, registry or other office located in the United States, financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against or in the Debtors or the Assets shall not have delivered to the Foreign Representative prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the Person has with respect to the Debtors or the Assets or otherwise, then with regard to the Assets that are purchased by Purchaser pursuant to

---

[4] For the avoidance of doubt, the provisions of section 1146(a) of the Bankruptcy Code do not apply to the Sale.

14

the Acquisition Agreement and this Order (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the Person with respect to the Assets and (b) Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Assets including, without limitation: (i) payment, satisfaction, and cancellation of record of Deed to Secure Debt and Assignment of Rents and Leases from Barrett Carpet Mills, Inc., a Georgia corporation, to Wells Fargo Capital Finance Corporation Canada, an Ontario corporation, dated August 6, 2013, filed for record August 14, 2013 at 1:23 p.m., recorded in Deed Book 5930, Page 225, Records of Whitfield County, Georgia; and (ii) termination of record of UCC Financing Statement No. 155-2013-0443 having Barrett Carpet Mills, Inc., as Debtor, and Wells Fargo Capital Finance Corporation Canada, as Secured Party, filed for record April 12, 2013 at 10:32 a.m. in Whitfield County, Georgia, and entered in the Central Indexing System of Georgia; as continued by UCC Financing Statement Amendment No. 155-2018-0012 having Barrett Carpet Mills Inc., as Debtor, and Wells Fargo Bank, National Association, as Secured Party, filed for record January 4, 2018 at 2:44 p.m. in Whitfield County, Georgia, and entered in the Central Indexing System of Georgia; as further continued by UCC Financing Statement Amendment No. 155-2018-0390 having Barrett Carpet Mills, Inc., as Debtor, and Wells Fargo Capital Finance Corporation Canada, as Secured Party, filed for record March 22, 2018 at 9:53 a.m. in Whitfield County, Georgia, and entered in the Central Indexing System of Georgia. Each and every federal, state or local government agency, department or office located in the United States is authorized to accept this Order for filing or recording in such government or agency's filing or recording system.

28862178.2

17. Purchaser is not and shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or (c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or operations of any or all Debtors.

18. The transactions contemplated by the Acquisition Agreement are undertaken by Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale shall neither affect the validity of the Sale nor the transfer of the Assets to Purchaser, free and clear of Claims, unless such authorization is duly stayed before the Closing pending such appeal.

19. Neither the Debtors nor Purchaser has engaged in any conduct that would cause or permit the Acquisition Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

20. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Bankruptcy Rules or Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. The Debtors, the Purchaser, and the Foreign Representative are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order. For the avoidance of doubt, the Debtors, the Purchaser, and the Foreign Representative may, in their discretion and without further delay, take any action and perform any act authorized under the Canadian Sale Order or this Order.

28862178.2

21. The terms and provisions of the Acquisition Agreement, the Canadian Sale Order, and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Debtors, the Purchaser, the Foreign Representative, the Debtors' creditors, and all other parties in interest, and any successors of the Debtors, the Purchaser, the Foreign Representative, and the Debtors' creditors, including any foreign representative(s) of the Debtors, trustee(s), examiner(s) or receiver(s) appointed in any proceeding, including without limitation any proceeding under any chapter of the Bankruptcy Code, CCAA, or any other law, and all such terms and provisions shall likewise be binding on such foreign representative(s), trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their creditors, or any trustee(s), examiner(s) or receiver(s).

22. Subject to the terms and conditions of the Canadian Sale Order and the Acquisition Agreement, the Acquisition Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed each party, and in accordance with the terms thereof, without further order of the Court; <u>provided</u> that any such modification, amendment or supplement does not materially change the terms of the Acquisition Agreement or any related agreements, documents or other instruments and is otherwise in accordance with the terms of the Canadian Sale Order.

23. No bulk sales law, or similar law of any state or other U.S. jurisdiction shall apply in any way to the transactions contemplated by the Acquisition Agreement, the Sale Motion or this Order.

24. The provisions of this Order and of the Acquisition Agreement are non-severable and mutually dependent.

### Additional Provisions

28862178.2

25. The failure to include any particular provision of the Canadian Sale Order, the Acquisition Agreement, or any related agreements in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of this Court that the Canadian Sale Order, the Acquisition Agreement, and any related agreements, with such amendments thereto as may be made by the parties in accordance with the Canadian Sale Order, this Order and the Acquisition Agreement be approved and authorized in their entirety.

26. Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtor or the Foreign Representative from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not an Asset.

27. Other than as explicitly set forth herein, this Court shall retain jurisdiction with respect to any and all matters, claims, rights, or disputes arising from or related to the implementation or interpretation of this Order, including without limitation, enforcement of the injunctions contained herein as well as, in the United States and as to those Assets located in the United States to, among other things, (i) interpret, enforce and implement the terms and provisions the Acquisition Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith) and (ii) to adjudicate disputes related to the Acquisition Agreement (and such other related agreements, documents or other instruments).

Dated: Wilmington, Delaware
       October _1_, 2018

                                                            _/s/ Kevin Gross_
                                                THE HONORABLE KEVIN GROSS
                                                UNITED STATES BANKRUPTCY JUDGE

28862178.2